Jacob N. WASSERMAN, Plaintiff,

v.

Stewart L. UDALL, Secretary of the Interior, Defendant.

Civ. A. No. 3207-62.

United States District Court
District of Columbia.

Oct. 22, 1964.

Jacob N. Wasserman, Washington, D. C., pro se.

Ralph S. Boyd, Martin Green, Department of Justice, for defendant.

James W. McDade, McIntosh & McDade, Washington, D. C., for intervenor-defendant.

WALSH, District Judge.

This matter came before the Court on cross motions for summary judgment filed on behalf of Plaintiff, Defendant and Intervenor-Defendant.

Plaintiff, Wasserman, seeks a declaratory judgment to enjoin the Secretary of the Interior from issuing a lease for certain oil and gas lands located in Maryland to any party other than plaintiff. Plaintiff alleges that an adverse decision of the Secretary of the Interior as to the priority of Plaintiff's offer to lease the land was arbitrary and capricious, as plaintiff was the person first making proper application for a non-competitive lease of said lands, and who is qualified to hold a lease under the Mineral Leasing Act for Acquired Lands, 30 U.S.C. § 352 et seq.

Defendant, the Secretary of the Interior, contends that plaintiff's offer was defective in that it failed to comply with the regulations; that when the Intervenor-defendant filed its offer this de-

ficiency had not been corrected; and further that plaintiff has not exhausted his administrative remedies, and the same will not be exhausted until such time as plaintiff's lease offer should be rejected.

The Intervenor, New York State Natural Gas Corporation, contends the decision of the Assistant Solicitor in finding the offer of plaintiff defective was proper; that such defect continued for failure of plaintiff to comply with the regulations; and that Intervenor's offer was the first offer to properly meet the requirements of the regulations.

The parties are in agreement as to the applicable statutes, rules and regulations, and the procedural steps followed, and have stipulated as to copies of documents to be received in evidence, comprising the proceedings before the Department of the Interior.

By authority of the Mineral Leasing Act of 1920, as amended, 30 U.S.C.A. § 226, the Secretary of the Interior may lease *public* lands subject to the Act if they are known or believed to contain oil or gas deposits. If lands to be leased are not within any known geologic structure of a producing oil or gas field, Sec. 226 requires that the Secretary issue a lease to the first qualified applicant without competitive bidding. If the lands are within a known geologic structure of a producing oil or gas field, they must be leased to the highest responsible qualified bidder by competitive bidding. By the Act of August 7, 1947, 30 U.S.C.A. § 352, the Secretary was authorized to also lease lands *acquired* by the United States.

Pursuant to authority, the Secretary promulgated rules and regulations governing noncompetitive oil and gas leases, one of which, set out at 43 C.F.R. 200.7 (d), provides that it shall not be in the public interest to grant a lease to one who would own less than a majority interest in the operating rights in any tract. In order to determine whether the offeror would own less than a majority, the regulation provides:

"An offer for a fractional present interest noncompetitive lease * * must be accompanied by a statement showing whether the offeror owns the entire operating rights to the fractional mineral interest not owned by the United States in each tract covered by the offer to lease, and if not, the extent of the offeror's ownership in the operating rights in each tract, and the names of the parties who own operating rights in such fractional interests."

Another regulation, set out at 43 C.F.R. 200.8(d), provides in part:

"Each offer must describe the land * * * if not surveyed [by the public lands survey] by a metes and bounds description * * * in a manner consistent with the description in the deed conveying such lands to the United States."

The land in question is part of Tract 186, Garrett County, Maryland, acquired by the United States under the deed of J. C. and Elmer R. Gaut dated February 24, 1937. This land was conveyed to the State of Maryland and is within the Savage River State Forest, the United States having reserved a 75 per cent interest in the mineral deposits. Since said land is not within any known geologic structure of a producing oil or gas field, the mineral rights may be leased by the United States to the first qualified offeror without competitive bidding.

The first offer to lease was filed by New York Gas, Intervenor herein, on February 13, 1958 (CLM–A 046107), the land description is given in metes and bounds, and was taken from the U. S. Forest Service records.

Plaintiff's offer, (BLM–A 04272) was filed March 11, 1958, and the land description is also in metes and bounds and is from the Land Records of Garrett County, Maryland, Vol. 114, at folio 497.

A decision of the Chief, Minerals Adjudication Section, of the Eastern States Land Office, dated August 28, 1958, as to the offer of New York Gas, found a balance was required in the payment of

advance rental, and stated that "payment of the balance at this time will afford the offeror no priority, since the lease offer will be subject to any intervening filings for the same lands." As to the Plaintiff's offer, the decision states the land description had been examined and found to be sufficient and adequate, and proper rental had been paid; therefore the priority date of that offer would precede the date of the intervenor's offer upon payment of the balance due. Intervenor filed notice of appeal on September 26, 1958.

On October 8, 1958, the Intervenor filed a new offer, (BLM–A 047739), containing a more detailed description of the land, and an attached map. On November 7, 1958, the intervenor filed a Protest against action in favor of plaintiff's offer, in which it was contended that plaintiff's description of the land was inadequate and failed to sufficiently identify the lands. At the same time intervenor withdrew its appeal noted on September 26, 1958. That appeal was dismissed on November 10, 1958, for failure to file a statement of reasons for appeal.

Intervenor's Protest was dismissed on February 2, 1959, and in its opinion the Eastern Land Office again stated that the description in plaintiff's offer was adequate and sufficient; that the offer complied with the department requirements and regulations and "is the first valid filing for the lands". New York Gas noted an appeal from this decision.

The Director, Bureau of Land Management, in a decision dated September 8, 1960, vacated the former decision of the Eastern States Land Office, and held that the description given in plaintiff's offer was deficient in that it did not mention Tract 282, lying within Tract 186, and the offer was not clear as to whether or not all or any part of Tract 282 is desired; that this deficiency was not considered in the decision of the Eastern Land Office of August 28, 1958, and therefore the matter of sufficiency of the description in this offer is not *res judicata* as contended by Wasserman, as it has been held that a defective ap-

plication is subject to rejection at any time a defect is discovered, citing Cf. Duncan Miller, A 27535 (March 1, 1958). The Director also found that while the intervenor's offer (BLM–A 047739) names both Tract 186 and Tract 282, since intervenor did not use or furnish as part of the description the proper survey map, it, too, was not sufficient to properly describe the lands sought to be leased. Both plaintiff and intervenor appealed to the Solicitor from this decision.

On July 19, 1962, the Solicitor found plaintiff's description by metes and bounds sufficient to describe the land, and satisfy the regulations; but he further found that the Wasserman offer, as originally filed, did not comply with the regulation requiring a statement showing ownership of the operating rights in the fractional mineral interest not owned by the United States; that Wasserman had amended this statement after New York's second offer was filed. The Solicitor further found that while New York's statement that the State of Maryland has not issued any lease covering its interest is not in compliance with the regulation; the additional statement that the State owns all the oil and gas operating rights in the land not owned by the United States does comply with the regulations. He also found that New York's description of the land was proper; and therefore, the offer of the intervenor was proper in all respects and was completed prior to plaintiff's offer, and accordingly, the New York offer had earned priority over plaintiff's offer to the extent the offers were in conflict. Plaintiff's petition for reconsideration was denied on September 13, 1962, and the instant case was filed October 10, 1962.

 Plaintiff contends that in oil and gas practice, a fee holder "leases" the mineral interests to a leaseholder, who may in turn "transfer" or contract out the operating rights to those mineral interests. Accordingly, plaintiff argues that his statement that "no lease has been issued by the State for its share of the mineral interests" fully complies, because if the State has issued no lease, clearly

no leaseholder has transferred the operating rights to another, and the Secretary should have had no trouble concluding that Maryland owned the operating rights.

However, as the Secretary points out, there is no legal impediment preventing the State of Maryland from transferring its operating rights without leasing its mineral interests. The statement of the offeror that the State has issued no lease for its fractional mineral interests, does not inform the Secretary whether Maryland retains the operating rights.

It is clear that even if Maryland had transferred its operating rights, plaintiff, as the lease-holder of 75% of the mineral interests in the tract, would have owned a majority of the operating rights. However, the Secretary is charged by Congress with administering all public lands held by the United States, and his policy must be consistent. Knowledge of ownership of operating rights in the fractional interests not owned by the United States is certainly relevant and necessary to a cohesive leasing program by the Secretary. The regulation merely puts the burden on the offeror to supply information with regard to the tract he seeks to lease.

The Secretary's interpretation of his own regulation becomes "of controlling weight unless it is plainly erroneous or inconsistent with the regulation". Morgan v. Udall, 113 U.S.App.D.C. 192, 306 F.2d 799 (D.C.Cir., 1962), and cases cited therein.

This Court is of the opinion that there is a valid purpose for the regulation in issue, and that the Secretary's interpretation is not unreasonable nor arbitrary as applied to plaintiff's offer.

■ Plaintiff further contends that the Secretary was arbitrary in interpreting the regulations as to the description of lands. The Intervenor in its offer had stated the lands requested comprise Tract 282 and part of Tract 186, and then proceeded to describe the land by relying on a Department of Agriculture survey made after the tracts were ac-

quired by the United States from individual owners. Plaintiff contends that this description does not comply with the regulation; and that since the Agriculture Survey was not before the Secretary, he could not take judicial notice of it, and therefore it was error for the Secretary to state that intervenor's description was "based upon the survey."

However, the regulation requires the description to be "consistent with the description in the deed conveying such lands to the United States", and the Solicitor found this "does not mean that it must be congruent or in exact conformity with [the deed], but is sufficient if it is in harmony and in substantial agreement with it." The Solicitor also stated that failure to submit a proper map "does not render the offer defective if the description otherwise satisfies the requirement of the regulation."

The Court cannot say that such interpretation is unreasonable. The requirements of the regulation are for the benefit of the Secretary, in order that he might determine exactly which lands are sought, and whether the land would conflict with other lease interests. If the Secretary is satisfied with the description, then the purpose for which the regulation was promulgated has been met.

■ Finally, plaintiff alleges that a prior decision of the Mineral Adjudication Section should be res judicata as to the priority of the plaintiff's offer, and precluded the Secretary from entertaining the intervenor's second offer.

It is clear that the Secretary, acting through his Solicitor in this case, has authority to correct or reverse a decision by a subordinate, even where an appeal is not taken to him, especially in the field of public lands management. Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963).

In Boesche, supra, at page 483, 83 S.Ct. at page 1380, the Supreme Court stated:

"The present case is a peculiarly appropriate one for administrative determination in the first instance.

At issue was simply the question whether petitioner's lease offer was defective * * *. Matters of this nature do not warrant initial submission to the judicial process. Indeed the magnitude and complexity of the leasing program conducted by the Secretary make it likely that a seriously detrimental effect on the prompt and efficient administration of both the public domain and the federal courts might well be the consequence of a shift from the Secretary to the courts of the power to cancel such defective leases."

It is the opinion of this Court that the decision of the Secretary, interpreting his regulations and in applying them to the offers of plaintiff and intervenor to lease the oil and gas interests is neither plainly erroneous nor unreasonable, and should not be disturbed.

Accordingly, plaintiff's motion for summary judgment will be denied, and the motions of defendant and intervenor will be granted.

Counsel for defendant to submit an appropriate order.